May it please the Court, Sylvia Baez on behalf of Merced Lopez-Ramirez. I guess there is no remedy available to Mr. Ramirez based on the Hudson case, Supreme Court case on the knock and notice issue. Although we don't concede that there was a violation, there is no remedy according to the Supreme Court now. So I'll move on to and I'd like to focus on the search with respect to the search of the second locked storage unit within a second garage that the agents were not aware of. In this case, the application for the search warrant did not contain a description of that second garage unit in the 28 or so apartment unit complex. There was no description of that second garage in the application. There was no description in the search warrant. And they didn't even know that it existed until my client's little girl mentioned it. So the search warrant does allow for searches of garages, and I guess just in general, curtilage is included in a search of premises. So what's the real problem? The problem is that the problem is that. I mean, apart from the fact that they found stuff there. Right. Right. That's one of the major problems. That's where they found the two gallons of ephedrine extraction. And incidentally, those were not calculated in Mr. Ramirez's sentence. His sentence was calculated on the whole conspiracy. But the problem is that the agents, in their surveillance of this whole situation, only localized one garage, and that was the family garage that they saw the wife drive her pickup into. And the agents, I think, needed to get, this does not come within the Leon exception to the warrant. The warrant does say, and any garages, and there's a laundry list, all rooms, attic, so forth. It makes a point of saying, and any garages, storage rooms, trash containers, and outbuildings of any kind. I don't think that this comes within the warrant application and within the warrant. How does it not come within any garages? This is more akin to a garage storage unit, maybe a block down the street, because it was nowhere near the apartment. They didn't know that it existed. They could have gone to just talk to the manager. They ignored the manager the whole time. But I still don't understand the problem. The fact that they don't know the specific garage exists, they know that people have storage areas in connection with their premises, frequently elsewhere on the lot. They include that within the warrant. Why is that a problem? The problem is that it wasn't particularly described, first of all, in the warrant. It talks about the warrant and the government cites the part of the warrant that talks about garages that are attached so that people can't see when they're surveilling, that they walk through the house and stay in the garage. This is not an attached storage unit. This was down the stairs from the apartment and over 150 yards to the rear of the apartment. It's not described as to how far apart the two different garages were, but the agents could have just talked to the manager if they wanted to search this home and all of the storage units attached to it. And like I said, this is more akin to a completely independent storage unit half a block down the street. And the agents weren't even aware of it until the little girl mentioned, oh, my dad uses this other garage, too. And so if that were the case and it was within the warrant, which I don't think is within the warrant, they should have gone and gotten another warrant for the second garage with a locked storage unit in it. Then if that were the case, then anybody's family member could say, oh, you know, we have this other storage unit, which is next door to the other apartment unit, and you can go search. I mean, agents could go search that. And that's not something that comes with this. Well, if they said you can go search that, they don't have a problem, do they? They didn't say that, though, in this case. I'm still, I guess, you get a warrant. Let's just even start with the apartment. The warrant doesn't usually describe the specifics of the apartment, what rooms are there. It says the apartment. Right, right. But this is, I think, a completely different situation where you have an unattached garage that's over 150 feet around the rear of the apartment complex, and it's nowhere near. The attached garage did not, I mean, there was no attached garage. The garage didn't have any numbers designating this is for the use of apartment number 26. Neither of the garages did. So I don't think that it was particularly described in the warrant, and that's why I don't think that the Leon exception applies. The other thing that I wanted to touch on was that Mr. Ramirez was sentenced in 1998, well before Apprendi and Blakely and Booker and all those other cases. And this, in this case, there were objections that were filed to the calculations in the amount in the pre-sentence report. There were objections that were filed to firearms that were found nowhere near Mr. Ramirez. They were found in other co-defendants' houses. The firearms in this case were stored in closets. I think that neither the drugs can be particularly designated as Mr. Ramirez's responsibility here, because one was found in another car completely separate from Mr. Ramirez, where he was nowhere near their location. Excuse me, Counsel. I had the impression that in your briefs, and I just might, it might escape me, in your brief what you asked was a remand for resentencing because of Booker and et cetera. Your argument sounds like you're attacking the specifics of the sentencing determination. Yes. Yes, there, I, it's possible, I mean, I'm sure that I probably didn't develop that argument as well as I should. That was my last argument that I briefed. Well, what it said was you wanted it sent back because of, I think, Booker, Kamaline, et cetera. And I did specifically state that these were, that there were enhancements that were attributed to Mr. Ramirez. There were no findings made by the district court judge, and that's another reason under Rule 32, and I did include that. I apologize if that's not very clear. I would request ---- It may be clear, and it's my memory that's foggy. That's a possibility. I apologize if it's not clear. And if the Court would allow me, I would request additional permission to brief that issue if it's not clear. And ---- If I were voting, I would say no. I don't see it. If you can point to something more specific, but the heading is very specific in referring to the challenge, the sentencing challenge as being the Booker-Fanfan challenge. I will, but I would like to reserve my last two minutes for rebuttal. Thank you. Ms. Peterson. Good morning, Your Honors. May it please the Court. I'm Carol Peterson on behalf of the government. And in the present case, Your Honors, the search warrant expressly permitted the search of the defendant's second garage that was searched by law enforcement. The defendant argues that there was no reasonable interpretation of the search warrant that would have encompassed an unknown garage. But as the Court has already pointed out, defendants seem to ignore the fact that the search warrant itself expressly authorized law enforcement to search defendants' apartment and, quote, any garages, storage rooms, trash containers, and outbuildings of any kind located thereon designated for the use of the occupants. That garage, although it may not have been next to or under the apartment itself, certainly was still on the apartment complex itself. And I'm not aware of any requirement regarding the proximity of a garage to an apartment for it to be able to be searched. The defendant also has argued to the Court this morning that because law enforcement did not know of the existence of defendant's second garage before obtaining the search warrant, they were somehow barred from searching it. But this is not the law. In fact, prior, obviously, to the search warrant being signed, law enforcement expressly sought authorization to search not just one garage but garages, not just a storage room but storage rooms. And importantly, all of these locations were phrased in the plural, contemplating that more than one might be found. In fact, Corporal Matthew Jones specifically discussed that possibility in the affidavit to the search warrant when he talked about the fact that, in his experience, methamphetamine conspirators had developed sophisticated methods to avoid detection of their operation and that they might use more than one location to store contraband, money, drugs, et cetera. Counsel, the appellant didn't mention it today, but I'm troubled by the warrant period. And it sort of looks to me like all you had was a C.I. who was not necessarily a good C.I. Just somebody said that people at Pasadena Street are involved in drugs. There was an indication that somebody or other had this red Plymouth and somebody or other had this blue truck, and they did something somewhere that, let's say, it looked like a flash, could be a flash. The red truck and the Plymouth are registered, the blue truck and the red Plymouth are registered to Wife and to Merced, respectively. The end. The blue truck is seen at some point parked in the garage. I don't see any other evidence in this thing to support that warrant. Is there more? Your Honor, I think in the context of all the information, there is a little bit more, although the Court has done a good job of summarizing. And I'm going to take another quick pass at it because the warrant itself, the affidavit pertained to a number of locations and a number of different potential defendants. It did. And it does get a little bit confusing. I'm talking just about these guys. I understand, Your Honor, and I will just discuss the information that pertains to the defendant in this case in the Pasadena Street location. But there are essentially three locations that pertain to this defendant for purposes of probable cause. First, in this case, there were two separate informants that spoke about the methamphetamine manufacturing operation that was going on at the Central Avenue Ranch in Chino. As the Court stated, there wasn't any particular information pertained in the warrant itself regarding the reliability and the past use of these informants other than to say that the first informant was designated a confidential, reliable informant. But no additional information was given about that. That's the first guy, and that's the Chino Ranch. But these cars are never seen at the Chino Ranch. That's exactly right, Your Honor. And the informant said that an unattached barn in the back was being used to make the meth. Okay. I say that by way of telling you that with the second informant who was used by Officer Doug Baas in this case, ultimately when the two were put together, there were corroborating circumstances, interlocking information that the government submits made their information more reliable than it would have been if you were just taking them alone and looking at the information. There was sufficient interlocking evidence that supported both of their stories. But anyway, back specifically to Mr. Ramirez. Obviously, that second informant told Officer Baas that an address in Pomona, in fact, Mr. Ramirez's specific address, was being used to distribute meth. So surveilling officers then went to the California Street address to conduct surveillance, and they saw the red Plymouth that was registered to the defendant leave the California Street address. They saw that that car was followed by the pickup that the car mentioned, and they saw that they went to a car dealership where they saw the driver of the Plymouth engage in what they believed to be a flash of money or narcotics. They then lost the Plymouth. They weren't able to actually surveil it back to the apartment complex, but they later saw the pickup truck parked at the apartment complex. Now, importantly, a couple of days later, law enforcement arrested two individuals leaving the Central Avenue Ranch with four pounds of finished product methamphetamine. Both of those individuals said that they lived at the California Street address where officers had surveilled the defendant leaving before the flash at the car dealership. Now, given all of these circumstances, the interlocking information that the CIs had provided, what appeared in Corporal Jones' experience to be a suspicious flash, and the fact that the cars they had seen ultimately returned to the Pasadena Street apartment complex, it was certainly reasonable for law enforcement to assume that whatever may have been inside that trunk had made its way into the apartment itself at Pasadena Street. I thought they only saw the truck return. They did only see the truck. So they didn't see the cars, and the narcotics were allegedly in the red place. That's correct. However, that car was registered to that apartment. I understand that, but they never saw that car return. No, they didn't. And in fact, they never saw that car at the apartment. They never did. Apparently, that car was in the garage that they didn't know existed prior to the execution because when they went to execute the search warrant, that car was in garage number three, the garage they did not know about prior to the search. But the blue, it was in fact registered to that address, as was the pickup truck. Kind of thin, no? Well, Your Honor, I think that it's based upon the totality of the circumstances. Certainly, I think if you look at some of the residences, there may have been more for some of the other residences, more evidence than there was for this particular one. But I do believe strongly that based upon the totality of the circumstances, that there was sufficient evidence linking. They never surveilled Pasadena and see, you know, Ramirez leaving and going to California and going and making a flight. They never see anything like that, right? No, they didn't. They don't even know if Ramirez was in the car when it went to make the flash, correct? They didn't. But given the fact that one of the cars that they had seen engaging in the flash, they saw back at that apartment complex immediately following the flash, I do believe that that's sufficient for them to believe that they might find contraband of some sort, even if they didn't necessarily know that it was the defendant who may have been involved. Now, the CI had said that it was a Hispanic male, but they didn't know if the defendant had a son who may have also lived there, who may have been driving that car. And the warrant certainly didn't say. They just say some Hispanic male got in and drove this red. They did say a name. I believe that the CI, the evidence established at the hearing established that it was a Miguel Lopez, so not totally unsimilar to a Merced Lopez Ramirez who did go by the name of Mike or the nickname of Mike. I know it happened with the guy at the hearing, but in terms of their affidavit. In terms of the actual affidavit itself. I don't think the CI saw Ramirez do anything. That is true, Your Honor. That is very true. At the very least, in this particular case, Your Honor, the good faith exception should apply here. Law enforcement had a warrant that authorized them to search the apartment and the garages that were under the defendant's control. The defendant's child told law enforcement about the existence of the second garage and keys were given to the agents by the defendant's wife. And these keys opened the cabinet inside the garage where the ephedrine extraction was found, obviously demonstrating that it was under her control, a resident of the Pasadena Street residence. And so, therefore, the government submits that the good faith exception, at the very least, should apply in this case. Finally, Your Honor, with regard to the remand of this case, given Booker the government does agree that a limited remand is appropriate in this particular case given that the district court believed that the sentencing guidelines were mandatory, that the court was required to follow them. However, with regard to the two issues raised by defense counsel of the amount of drugs and the guns, I believe that those were addressed by the parties in the argument, and the court found that it did not accept defendant's arguments specifically regarding the liquid methamphetamine, which defendant wasn't even held accountable for in his sentence. So I believe that the court did adequately address defendant's concerns and a limited remand is the only thing that is necessary in this particular case. Thank you. Kagan. Thank you, Ms. Peterson. Ms. Mason. I apologize for being rude earlier and not answering the judge's question regarding where I indicated that there were disputes in the sentencing and why I think that more than just a limited remand should be accorded to Mr. Ramirez. I did state in my brief on page 60 that there were calculations that were disputed by the parties, and the court really made no findings, just said I disagreed with defense and this is the amount I'm going to go exactly by probation's recommendation, and Mr. Ramirez disputed those issues all along in a motion for a new trial. Disputed the quantity? The quantity, yes. Okay. I thought he stipulated the quantity. And the firearms. I thought he stipulated the quantity. He stipulated a trial. He stipulated a trial to some quantity, but it was not clear, and he preserved argument regarding the ---- I don't quite understand that. I mean, the stipulation you stipulated, it may have not been clear at all, but if you've agreed to it, you've agreed to it, haven't you? I don't think that it was clear as to what exactly he agreed, but he did preserve arguments regarding the impurities and the amounts, and he did object to the firearms enhancements. And with respect to the particularity, again, and there is a new case where this circuit, it's called Banks-Salazar, talks about how a defendant cannot be held to just limited remand when no one, not the circuit or anybody else, has the authority to do so.  think that any of us could have discerned that the Supreme Court would only hold the ---- would only hold that the guidelines were mandatory and then allow them to be advisory after that. And again, this is ---- Kagan, I think your time has expired. We understand the argument and appreciate it. Thank you. The matter just argued will be submitted. Thank you. Well, next, your argument in Peyton. Thank you.
judges: Fernandez, Rymer, Clifton